# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

U.S. DISTRICT COURT
SO. DIST. AL.
MOBILE, AL. 36602

SEP 3 3 02 PM '96

FILED
CLERK'S OFFICE

NELLIE BOWMAN,

    Plaintiff,

v.

COLEMAN COMPANY, INC., et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.

96-0448-P-C

## REPORT AND RECOMMENDATION

Plaintiff Nellie Bowman ("Ms. Bowman") has filed a motion to remand this action to the Circuit Court of Mobile County, Alabama on the ground that removal was improvidently granted (tab 7). In a motion addressing the same substantive issues, defendant Michael Elkins ("Mr. Elkins") has moved for dismissal of all claims asserted against him by the plaintiffs (tab 3). These motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 26. After careful consideration of the arguments raised by the parties in their briefs and at oral argument, the Court recommends that the motion to remand be DENIED and the motion to dismiss be GRANTED for the reasons set forth below.

I. Factual Background[1]

On November 3, 1995, the plaintiff's son, Andrew Bowman ("Mr. Bowman"), purchased a Coleman PowerMate, 17,000 BTU, propane radiant heater, Model No. 5017-751T, at a Lowe's

---

[1] For the purposes of the motions being considered, the facts are construed in the light most favorable to the plaintiff. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (in considering fraudulent joinder issue, questions of fact must be assessed in plaintiff's favor); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (in summary judgment context, court considers all inferences drawn from underlying facts in light most favorable to nonmovant).

retail store in Mobile, Alabama. Because he was dissatisfied with a similar heater which had not functioned properly, Mr. Bowman spoke with Mr. Elkins, the Lowe's store manager, about the possibility of exchanging his old heater for a new one. Mr. Elkins agreed to allow Mr. Bowman to exchange his malfunctioning heater for the Coleman heating unit which is the subject of this lawsuit. Prior to the sale of the new heater, Mr. Elkins allegedly advised Mr. Bowman that the Coleman unit was a good heater and that Mr. Bowman would not experience any problems with it. On February 3, 1996, the plaintiff sustained severe burns when the Coleman PowerMate heater which her son had purchased at Lowe's on Mr. Elkins' verbal endorsement allegedly malfunctioned.

On March 26, 1996, Ms. Bowman filed the instant lawsuit against defendants Coleman Company, Inc. ("Coleman"), Lowe's Home Centers, Inc. ("Lowe's"), and Mr. Elkins in the Circuit Court of Mobile County, Alabama. On May 10, 1996, the defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441 et seq. In their notice of removal, defendants indicated that federal subject matter jurisdiction was predicated on diversity of citizenship. The plaintiff now seeks remand of this action to state court on the ground that this Court lacks diversity jurisdiction. Defendant Mr. Elkins has also moved for dismissal of all causes of action raised against him. Pursuant to Rule 12(b), Fed.R.Civ.Pro., the Court is construing the motion to dismiss as a motion for summary judgment under Rule 56, Fed.R.Civ.Pro. Both motions have been thoroughly briefed, and oral argument was held before the undersigned on June 3, 1996.

II. Legal Analysis

A. Fraudulent Joinder of Defendant Mr. Elkins

The merits of plaintiff's motion to remand hinge on the presence or absence of complete

2

diversity of citizenship in this action. See 28 U.S.C. § 1332(a) (conferring upon federal district courts original jurisdiction over actions between citizens of different states where amount in controversy exceeds $50,000). It is well-established that diversity jurisdiction requires complete diversity of citizenship, such that no party on one side of a controversy may be a citizen of the same state as any party on the other side. See, e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359 (11th Cir. 1996); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989). In the case at bar, it is undisputed that the plaintiff is a citizen of Alabama, while defendant Coleman is a Kansas corporation with its principal place of business in Kansas and defendant Lowe's is a North Carolina corporation with its principal place of business in North Carolina. Defendant Mr. Elkins is a citizen of Alabama. Despite the lack of diversity between the plaintiff and Mr. Elkins, the defendants removed this action on the ground that Mr. Elkins' citizenship should not be considered because he was fraudulently joined as a defendant.

The presence of a non-diverse party who has been fraudulently joined does not destroy a federal court's diversity jurisdiction over an action. See Tapscott, 77 F.3d at 1359; Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). A defendant is considered fraudulently joined if there is "no possibility the plaintiff can establish any cause of action against the resident defendant." Cabalceta, 883 F.2d at 1561; Autrey v. United Companies Lending Corp., 872 F. Supp. 925, 929 (S.D. Ala. 1995). As the parties seeking removal, the defendants bear the burden of proving that there is no possibility that a state court would find the plaintiff's complaint to state

---

[2]A second avenue for establishing fraudulent joinder exists where the plaintiff has fraudulently pled jurisdictional facts in order to bring a resident defendant into state court. See Tapscott, 77 F.3d at 1360 n.17; Cabalceta, 883 F.2d at 1561. The defendants in this case have not alleged fraud in the pleading of jurisdictional facts; therefore, this means of establishing fraudulent joinder is not applicable here.

3

a cause of action against Mr. Elkins, and that Mr. Elkins' joinder in this matter was therefore fraudulent. See Cabalceta, 883 F.2d at 1561; Lane v. Champion International Corp., 827 F. Supp. 701, 707 (S.D. Ala. 1993) (declaring that removing party must establish fraudulent joinder by clear and convincing evidence). In ruling on this issue, the district court must assess all questions of fact and controlling law in favor of the plaintiff. See id.; Coker, 709 F.2d at 1440.

### 1. Plaintiff's Claims Under AEMLD

The first cause of action asserted against Mr. Elkins in the complaint is a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). A plaintiff can invoke the AEMLD only as to manufacturers and sellers of allegedly defective products. See Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala. 1987). The Alabama Supreme Court recently summarized the criteria which a plaintiff must satisfy in order to maintain an AEMLD action against a seller of a product as follows:

> "To establish liability under the AEMLD, the plaintiff must show that he suffered an injury caused by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold." Carter v. Cantrell Machine Co., Inc., 662 So.2d 891, 892 (Ala. 1995) (citing Sapp v. Beech Aircraft Corp., 564 So.2d 418 (Ala. 1990)).

An obvious threshold inquiry to a finding of AEMLD liability is a determination of whether a particular defendant may be labeled a "seller" of a product. The defendants argue vigorously that Mr. Elkins cannot properly be deemed a seller of the Coleman heater purchased by Mr. Bowman. Because Mr. Elkins was an employee of Lowe's, defendants contend, he was merely an agent of the seller and therefore cannot be liable under the AEMLD. In response, the plaintiff asserts that it is incongruous at best for the defendants to contend that Mr. Elkins, a

4

salesperson by trade, should not be considered a seller under the AEMLD.

Alabama courts have not addressed the question of whether a retail store employee may properly be considered as seller of a product, for AEMLD purposes.[1] However, several other jurisdictions have faced similar questions in analogous circumstances. For example, in Memphis Bank & Trust Co. v. Water Services, Inc., 758 S.W.2d 525 (Tenn. 1988), the Tennessee Supreme Court examined whether a salesman for a manufacturer of a water treatment device could be deemed a "seller" or a "manufacturer" for products liability purposes. In that case, the court set aside a judgment against the salesman, pursuant to the following findings:

> "[The individual defendant] is shown by the uncontradicted evidence in this case to be a sales representative of the corporate defendant. On all sales made for his employer he was paid a commission. He was neither a stockholder, a director nor an officer of the corporate defendant, insofar as the record shows. The corporation is clearly both a 'manufacturer' and a 'seller'. [The individual defendant] was neither." Id. at 526.

Likewise, in Musser v. Vilsmeier Auction Co., 562 A.2d 279 (Pa. 1989), the Pennsylvania Supreme Court held that an auctioneer is not a "seller" for the purposes of establishing products liability. In support of this decision, that court reasoned that the auctioneer was simply "the means of marketing" the product, and that he was "not equipped to pass upon the quality of the myriad [] products he is called upon to auction". Id. at 282; see also Tauber-Arons Auctioneers Co., Inc. v. Superior Court for County of Los Angeles, 161 Cal.Rptr. 789, 798 (Cal.App.2 Dist. 1980) (finding that auctioneer cannot be liable under strict products liability where auctioneer is a marketer who played "no more than a random and accidental role" in the distribution of a

---

[1] At oral argument, the plaintiff directed the Court's attention to Caudle v. Partridge, 566 So.2d 244 (Ala. 1990), in which an individual seller was held liable under the AEMLD. However, the individual's liability in Caudle was predicated on his status as a sole proprietor, not as a salesman; therefore, the Caudle decision is inapposite.

5.

defective product). More importantly, the <u>Musser</u> court observed that:

> "Sellers may sell in any fashion they choose: sky writing, signs, handbills, electronic media or any method to suit their purpose, including auction. When they do they remain liable and the agents of their method are but agents and extensions of their enterprise [and are not liable]." <u>Musser</u>, 562 A.2d at 283.

Though cases like <u>Memphis Bank</u> and <u>Musser</u> originate in and apply the law of other jurisdictions, they strongly suggest that Mr. Elkins cannot be considered a "seller" under AEMLD.[4]

More generally, the applicable case law is clear that the policy aims of strict products liability for sellers would not be furthered by sweeping individuals such as Mr. Elkins within the doctrine's ambit. Indeed, in creating the AEMLD, Alabama's high court explained its intention to place "the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." <u>Atkins v. American Motors Corp.</u>, 335 So.2d 134, 139 (Ala. 1976). This rationale is consistent with the policy justifications articulated by numerous other state courts for expanding products liability to embrace all entities within the distributive chain of a defective product. For example, in <u>Nutting v. Ford Motor Company</u>, 584 N.Y.S.2d 653, 657 (N.Y.A.D.3 Dept. 1992), a New York court observed that the policy considerations for seller liability included the following:

> "[T]he ability of the seller, because of its continuing relationship with the manufacturer, to exert pressure for the improved safety of products and to recover

_____

[4] This view is further bolstered by the fact that numerous jurisdictions have held that liability in a products liability case should extend only to those in the distributive chain through which products travel in order to reach the market. <u>See, e.g., Parker v. St. Vincent Hospital</u>, 919 P.2d 1104 (N.M. App. 1996); <u>Dunn v. Kanawha County Board of Education</u>, 459 S.E.2d 151 (W.Va. 1995); <u>Daly v. General Motors Corp.</u>, 575 P.2d 1162, 1170 (Cal. 1978); <u>Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc.</u>, 528 S.W.2d 703, 705 (Ky. 1975); <u>Allison Steel Mfg. Co. v. Superior Court of Maricopa County, Division Three</u>, 511 P.2d 198, 202 (Ariz. App. 1973). While a salesman may be an agent of an entity in the distributive chain, the salesman himself is not a part of such a chain.

6.

increased costs within their commercial dealings, or through contribution or indemnification in litigation; additionally, by marketing the products as a regular part of their business such sellers may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods." *Id.* at 657 (quoting *Sukljian v. Charles Ross & Son Co.*, 503 N.E.2d 1358 (N.Y. 1986)); *see also Crowe v. Public Building Commission of Chicago*, 370 N.E.2d 32, 34 (Ill. App. 1 Dist. 1977) (supplier liability for defective products is driven by general considerations of justice which dictate that those who create the risk and reap the profit should also bear the loss); *Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314, 323 (Cal.App. 2 Dist. 1972) (sellers are held liable because they have participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance on the product).

Mr. Elkins is an employee of a corporate defendant. In his position as store manager, he has no authority to compel or prevent the distribution of particular products by Lowe's, for such product distribution decisions are vested in the Lowe's home office, rather than in its individual store managers. *See* Elkins Deposition, at 34-35, 74. While Lowe's likely has accumulated sufficient market power to exert pressure on manufacturers to improve the safety of their products, Elkins has not. Likewise, it is Lowe's, and not Mr. Elkins, who reaps the profit from the distribution of products such as the Coleman heater; therefore, it is Lowe's, and not Mr. Elkins, who should be required to bear the risk of such products being defective.[3] Finally, Lowe's has a participatory market connection with Coleman, through which avenue Lowe's may be able to recoup the increased costs which it incurs as a result of seller liability. Mr. Elkins does not. In short, the policy goals underlying the AEMLD would not be advanced in any way by holding

---

[3]Mr. Elkins is a salaried employee of Lowe's. *See* Elkins Deposition, at 12. Although Lowe's does have an employee bonus program based, in part, on store profits, there is no evidence that this program would allow Mr. Elkins to reap any appreciable share of Lowe's profits earned from the distribution of defective products. The Court is of the opinion that a simple employee bonus plan, without more, is insufficient to activate the policy considerations of aligning profits and risks which underlie seller liability in the AEMLD context.

7

persons such as Mr. Elkins liable in their role as store managers or sales representatives.

In light of the foregoing analysis, the Court believes that neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass salespersons, store managers, or other agents of a retailer. Accordingly, the undersigned is of the opinion that there is no possibility that Ms. Bowman could successfully assert her AEMLD claim against Mr. Elkins in state court.

### 2. Plaintiff's Negligence/Wantonness Claims

The remaining causes of action advanced against Mr. Elkins in the complaint are negligence and wantonness claims. In particular, the plaintiffs allege that the store manager's actions were negligent and wanton inasmuch as he knew or should have known that the Coleman heater sold to Mr. Bowman was unsafe.[6] Defendants contend that there is no possibility that Ms. Bowman could assert these causes of action against Mr. Elkins in state court.

To recover in a negligence or wantonness action, a plaintiff must establish the following elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach."[7] Kelly v. M. Trigg Enterprises, Inc., 605 So.2d

---

[6] According to the plaintiff, Mr. Elkins knew or should have known the heating unit was unsafe because it lacked a regulator and because there was no indication on its container that it had been approved by any independent testing laboratory.

[7] The criteria listed here are shared by both negligence and wantonness actions. In addition to those elements listed above, a party seeking to recover on a wantonness theory must also show that the defendant's omission of a duty was done with knowledge and consciousness of the likelihood of injury which would result from such an omission. See Lynn Strickland Sales and Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala. 1987) (wantonness characterized by state of mind in which duty was omitted); Tyler v. City of Enterprise, 577 So.2d 876, 877 (Ala. 1991) (both negligence and wantonness claims require showing that defendant owed duty).

8

1185, 1190 (Ala. 1992) (quoting <u>Hall v. Thomas</u>, 564 So.2d 936, 937 (Ala. 1990)). Defendants argue that the plaintiff's negligence and wantonness claims against Mr. Elkins must fail because he owed her no duty of care. See <u>Ledbetter v. United American Ins. Co.</u>, 624 So.2d 1371, 1373 (Ala. 1993) (whether there is duty is threshold inquiry in negligence case). In response, the plaintiff articulates three separate duties which Mr. Elkins allegedly owed to her: (1) a duty to prevent an unsafe product from entering the stream of commerce; (2) a duty to warn of the dangerous nature of a product; and (3) a duty to be careful not to hurt others.

With respect to the first alleged duty, it is clear that Mr. Elkins lacked the authority from Lowe's to prevent the Coleman heater from entering the stream of commerce. As stated above, Lowe's, and not Mr. Elkins, was responsible for deciding which products to distribute at the Mobile store. Plaintiff cites no authority for the proposition that a salesman or store manager owes customers a duty to prevent unsafe products from entering the stream of commerce.[*] Moreover, the recognition of such a duty would impose strict products liability on persons such as Mr. Elkins based on an employer's decision to market a certain product. As a practical matter, this rule would result in salespeople with no control over product marketing or distribution decisions being declared negligent for those decisions. Under Alabama law, "the duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or refrain from doing some act for the safety and well-being of the plaintiff." <u>Buchanan v. Merger Enterprises, Inc.</u>, 463 So.2d 121, 125-26 (Ala. 1984). Clearly, no public policy interest would be advanced by holding a salesperson liable in negligence for a corporate

---

[*]By the time the products reach the salesman, they have already entered the stream of commerce. The salesman simply acts as a marketing medium, an agent of his employer, in disseminating the goods.

9

decision into which he had no input and over which he had no control. The undersigned is of the opinion that Mr. Elkins owed Mr. Bowman no duty to prevent harmful products from entering the stream of commerce.

Second, the plaintiff asserts that Mr. Elkins owed her a duty to warn of the dangerous nature of the product. In support of this argument, Ms. Bowman cites <u>Caudle v. Partridge</u>, 566 So.2d 244, 247 (Ala. 1990), in which the Alabama high court stated that manufacturers and sellers have a duty to warn the public about products which they know or should know to be dangerous. <u>See id.</u> As indicated previously, Mr. Elkins is neither a seller nor a manufacturer; therefore, the <u>Caudle</u> decision does not impose any such duty to warn on him.[7]

Third and finally, Ms. Bowman invokes the general duty imposed by Alabama law on all persons to be careful not to hurt others. <u>See Smitherman v. McCafferty</u>, 622 So.2d 322, 324 (Ala. 1993); <u>Southeastern Greyhound Lines v. Callahan</u>, 13 So.2d 660, 663 (Ala. 1943). While Alabama courts do recognize such a general duty, they also state that the determination of whether this duty exists in a particular context should be based on the consideration of "a number of factors, including public policy, social considerations, and foreseeability." <u>Smitherman</u>, 622 So.2d at 324. For the reasons outlined previously, neither public policies nor social

---

[7] It is true that an individual may voluntarily shoulder a duty to inspect a product, in which case a duty to warn would arise. <u>See Adams v. Travelers Insurance Co.</u>, 494 So.2d 401, 403-04 (Ala. 1986). However, the uncontroverted evidence is that Mr. Elkins undertook no such voluntary duty and, indeed, lacked the training and expertise to perform inspections of Lowe's products. <u>See Elkins Deposition</u>, at 15-16, 33-34, 75-76. As a result, <u>Adams</u> cannot serve as a basis for finding that Mr. Elkins owed Mr. Bowman a duty to warn about the unsafe nature of the Coleman heater which he purchased. <u>Accord Cook v. Safeway Stores, Inc.</u>, 330 P.2d 375, 376 (Okla. 1958) (store clerk owes duty to supply customers wholesome food only where clerk has knowledge of unfitness or assumes duty to inspect food); <u>Crosby v. Calaway</u>, 16 S.E.2d 155, 159 (Ga.App. 1941) (same).

10

considerations would be furthered by the imposition of a duty of care on Mr. Elkins in this case. Moreover, the undersigned is of the opinion that the dangerous nature of the heater was not foreseeable to Mr. Elkins, who did not possess the training, expertise, background, or responsibility to inspect or test products such as the Coleman heater for defects. Therefore, the undersigned is of the opinion that no general duty of care is applicable in this case.

As this analysis demonstrates, it is evident that Mr. Elkins owed Ms. Bowman no duty which could give rise to personal liability on a negligence or wantonness theory. Hence, the undersigned believes that there is no possibility that the plaintiff could maintain such negligence or wantonness claims in state court. Given the Magistrate Judge's previous recommendations with respect to the AEMLD claims, the undersigned is of the opinion that the plaintiff fraudulently joined Mr. Elkins in this action, as there is no possibility that she could successfully interpose any of her claims against him in state court. Because Mr. Elkins has been fraudulently joined, his citizenship is immaterial for the purposes of evaluating the presence or absence of diversity jurisdiction in federal court. Complete diversity exists among the remaining parties. It is therefore the recommendation of the undersigned that the plaintiff's motion to remand be DENIED on the ground that there is complete diversity of citizenship among all parties properly joined and served in this litigation and that federal jurisdiction properly lies.

B. *Mr. Elkins' Motion to Dismiss*

By order dated July 11, 1996, this Court advised the parties that it would construe Mr. Elkins' motion to dismiss as a motion for summary judgment. The undersigned is of the opinion that the foregoing recommendation on the fraudulent joinder issue effectively disposes of the summary judgment issue, as well. Indeed, the undersigned has already determined that there is no

11

possibility that the plaintiff could pursue any of her state law claims against Mr. Elkins in state court. There being no possibility of relief, it necessarily follows that there can be no genuine issue of material fact with respect to any of plaintiff's claims against Mr. Elkins. Therefore, the Magistrate Judge believes that Mr. Elkins is entitled to judgment as a matter of law with respect to all of those claims, pursuant to Rule 56(c), Fed.R.Civ.Pro. Accordingly, the undersigned recommends that Mr. Elkins' motion for dismiss, which was treated as a motion for summary judgment, be GRANTED and that the claims against him be DISMISSED with prejudice.

III. Conclusion

For all of the foregoing reasons, the undersigned recommends that the plaintiff's motion to remand this action to the Circuit Court of Mobile County, Alabama, be DENIED, and that defendant Elkins' motion to dismiss be GRANTED and the claims asserted against him be DISMISSED with prejudice.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 3rd day of September, 1996.

WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

12

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection.** Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a _de novo_ determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); _Lewis v. Smith_, 855 F.2d 736, 738 (11th Cir. 1988); _Nettles v. Wainwright_, 677 F.2d 404 (5th Cir. Unit B, 1982)(_en banc_). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in Local Rule 26(4)(b), which provides that:

> Any party may object to a magistrate judge's proposed findings, recommendations or report made under 28 U.S.C. § 636(b)(1)(B) within ten (10) days after being served with a copy thereof. The appellant shall file with the Clerk, and _serve on the magistrate judge_ and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. A judge shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his discretion or where required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A Magistrate Judge's recommendation cannot be appealed to a Court of Appeals; only the District Judge's order or judgment can be appealed.

2.  **Transcript (applicable where Proceedings Tape Recorded).** Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

_(signature)_

UNITED STATES MAGISTRATE JUDGE

01/27/04  13:46 FAX 8016807201          BUTLER, SNOW ATTY'S                                    ☑002

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JAN 2 1 2004

J.T. NOBLIN, CLERK
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HOWARD J. LIZANA, SR. and
SHEILA LIZANA                                                    PLAINTIFFS

VERSUS                                          CIVIL ACTION NO. 1:03cv254GRo

GUIDANT CORPORATION; GUIDANT
SALES CORPORATION; JOHN S. BURROW
and JOHN DOES 1-100                                             DEFENDANTS

### O R D E R

This cause comes before the Court on motion of the Plaintiffs, Howard and Sheila Lizana, to remand [5-1] the above referenced action to the Circuit Court of Harrison County, Mississippi. Pursuant to the Memorandum Opinion entered in this cause, this date, incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED that the Plaintiffs' motion to remand [5-1] this case to the Circuit Court of Harrison County, Mississippi, be, and is hereby denied. It is further,

ORDERED AND ADJUDGED that the Defendant John S. Burrow be, and is hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED that each party bear their respective costs associated with this motion.

SO ORDERED AND ADJUDGED this the 20th day of January, 2004.

_____
UNITED STATES DISTRICT JUDGE

JAN 27 2004 14:44                          9816807201               PAGE.02

01/27/04  13:47 FAX 9016607201            BUTLER, SNOW ATTY'S                                    ☒003

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
JAN 2 1 2004
J.T. NOBLIN, CLERK
By_____ Deputy

HOWARD J. LIZANA, SR. and
SHEILA LIZANA                                                    PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 1:03cv254GRo

GUIDANT CORPORATION; GUIDANT
SALES CORPORATION; JOHN S. BURROW
and JOHN DOES 1-100                                              DEFENDANTS

MEMORANDUM OPINION

This cause comes before the Court on motion of the Plaintiffs, Howard and Sheila Lizana,

to remand [5-1] the above referenced action to the Circuit Court of Harrison County, Mississippi.

The Court has duly considered the record in this action, and the briefs of counsel, and being fully

advised in the premises, concludes as follows.

The instant lawsuit stems from an incident on April 19, 2001, in which Plaintiff, Howard

J. Lizana, Sr., collapsed at work, necessitating his transport to the emergency room at Garden

Park Medical Center in Gulfport, Mississippi. Lizana was diagnosed with a malfunctioning

pacemaker. (Mot. to Remand, Exh. D.) Lizana had a pacemaker which was manufactured by

Guidant Corporation implanted on May 28, 1998. The pacemaker system was comprised of the

following component parts: Discovery DR Model 1274 serial no. 400677; CPI Lead model

4269, serial No. 295695; and CPI lead model 4285, serial no. 249255. The pacemaker was

routinely checked by Guidant representatives, including the check performed by the Defendant

01/27/04  13:47 FAX 9016607201          BUTLER, SNOW ATTY'S                                  ☒004

John Burrow on March 9, 2001, at which time Burrow concluded the pacemaker was performing as intended, according to the Plaintiffs. (Mot. to Remand, Exh. C.)

According to the Plaintiffs, on or about May 2000, the Medical Devices Agency of the UK Department of Health published a technical note [MDA P.TN'83] on adverse incidents reported concerning several Guidant model pacemakers, which included model 1274. The pacemaker allegedly had premature battery depletion, and the incidents were reported to Guidant by May 2000. This incident was the subject of a recall reported by the Food and Drug Administration [FDA] on May 5, 1999. (Remand Mot., Exh. A.)[1] According to the hospital emergency department notes, Lizana's pacemaker failed, and a replacement pacemaker, model 12709 was implanted into Lizana on the following day. (Id., Exh. D.)

In the complaint, Plaintiffs seek damages from Defendants Guidant Corporation, Burrow, and John Does 1-100, claiming these Defendants are liable for designing and assembling the pacemaker which malfunctioned, for negligent failure to inspect and manufacture the pacemaker, and breach of warranty. (Comp., pp. 4-7.) The Plaintiffs maintain that Burrow discussed with them the reason for the pacemaker's failure, but did not inform them that the pacemaker was the subject of a recall. (Mot. to Remand, p. 9; Exh. C.) Burrow allegedly told the Lizana's that the pacemaker failed because of a dead battery. (Id., Exhs. C-D.) Plaintiffs contend that Burrow is liable in this case because he participated in the initial surgery when the pacemaker was implanted into Lizana and had tested the pacemaker in March 2001, assuring the Plaintiffs at that time that the pacemaker was functioning "perfectly." (Id.)

The Plaintiffs also argue that the Court should allow discovery for purposes of identifying the John Doe Defendants and that any ruling on the motion to remand should be postponed until

2

that discovery can be conducted. (Mot. to Remand, pp. 9-10.) In addition, the Plaintiffs seek an award of fees and expenses related to the removal. (Id., p. 10.)

Defendants Guidant Corporation, Guidant Sales Corporation and Burrow, contend that Burrow was fraudulently joined, and that his citizenship should be disregarded for purposes of determining diversity jurisdiction. (Def.'s Resp., p. 1.) The Defendants maintain that the Plaintiffs cannot furnish a basis for recovery against Burrow, a sales representative, under Mississippi law. (Id.) According to the Defendants, Lizana's pacemaker was not the subject of a recall. (Id.; Mot. to Remand, Exh. A.) In addition, the Defendants assert that even if the pacemaker had been subject to a recall, that information is not relevant to the joinder of Burrow as a defendant because he is a mere salesperson. (Id., p. 2.) According to the Defendants, sales representatives are not considered sellers of products under Mississippi law and cannot be liable for negligence, failure to warn, misrepresentation or breach of warranty. (Id.) Burrow had no duty to warn Lizana of an alleged defect in the pacemaker, according to the Defendants. (Id., p. 4.) The Defendants argue that only the manufacturer had a duty to warn the physician of any alleged defect in the medical device. (Id.) Only the manufacturer can be liable for claims of breach of the warranty of merchantability or fraudulent misrepresentation, and sales representatives cannot be held liable under these theories according to the Defendants. (Id., pp. 4-5.)

The Defendants also assert that the citizenship of any John Doe Defendants should be disregarded for purposes of removal. (Id., p. 5.)

3

01/27/04  13:47 FAX 9016807201          BUTLER.SNOW ATTY'S                    ☐006

### Discussion

It is axiomatic that federal courts are courts of limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The burden of establishing that federal jurisdiction exists lies with the Defendants because they are seeking to invoke this Court's jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied* 534 U.S. 993. All doubts are resolved against removal. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). When a party invokes the doctrine of fraudulent joinder, the removing party must demonstrate that there is no possibility that the plaintiffs could establish a cause of action against the fraudulently joined party in state court. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

For purposes of removal, the Court disregards citizenship of Defendants sued under fictitious names. 28 U.S.C. § 1441(a). Accordingly, the Court finds that any assertions by the Plaintiffs that remand related discovery should be allowed to identify John Doe Defendants should be denied.

Under Mississippi law, the "learned intermediary doctrine" applies to all medical devices. *Moore v. Memorial Hosp. Of Gulfport*, 825 So.2d. 658, 664 (Miss. 2002). Under this doctrine, a medical device's manufacturer possesses a duty to warn a physician about possible dangers regarding the device, with sales representatives of the manufacturer under no obligation to warn patients about the device. *Bennett v. Madakasira*, 821 So.2d. 794, 804 (Miss. 2002). *Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 (S.D. Miss. 2000). A sales representative, acting as agent for a disclosed principal, can be liable when he is found to have directly participated in the

alleged tortious conduct in the scope of his employment. *Walker v. Medtronic, Inc.*, 2003 WL 21517997, *3 (N.D. Miss. 2003). The Court finds that Burrow cannot be liable for any alleged failure to warn advanced by Plaintiffs' allegations in their complaint, and that there is no basis for any claim based on strict liability asserted against Burrow.

The Plaintiffs contend that Burrow was negligent based on his alleged failure to inspect and properly test the pacemaker and alleged failure to warn the Plaintiffs of the alleged design defect of the pacemaker. (Compl., p. 6.) As discussed above, Burrow had no legal duty to warn patients of possible problems regarding the medical devices. Furthermore, the Plaintiffs have offered no evidence beyond mere conjecture that Burrow was even aware of the recall of certain Guidant pacemaker devices. The Court cannot impose a duty to warn on Burrow when no evidence is presented connecting him with knowledge of the recall to support the Plaintiffs' claims. *See Johnson v. Parke-Davis*, 114 F.Supp. 2d 522, 524 (S.D. Miss. 2000). Finally, from the evidence presented to the Court, the serial number of Lizana's pacemaker was not one of the models subject to the recall.

In addition, the Plaintiffs offered no evidence showing Lizana's pacemaker was actually malfunctioning on March 9, 2001, when the Plaintiffs allege that Burrow stated the pacemaker was functioning "perfectly." (Mot. to Remand, Exh. A.) A plaintiff wishing to defeat a fraudulent joinder claim must plead specific facts and avoid advancing claims in general terms or make mere allegations of wrongdoing on the part of the non-diverse defendant. *Walker*, 2003 WL 21517997 * 5, citing *Guidry v. Bank of LaPlace*, 954 F.2d. 278,281 (5th Cir. 1992). The Plaintiffs have presented no evidence to support the assertion that the pacemaker was in fact malfunctioning at the time Burrow's made the statement regarding its performance.

5

The Plaintiffs have offered no factual basis for their breach of warranty claim against Burrow, and even if they had, there is no legal basis for their breach of warranty claim against Burrow. *Johnson*, 114 F. Supp.2d at 525; *In re Rezulin Prod. Liab. Litig.*, 133 F. Supp.2d 272, 286 (S.D. N.Y. 2001); *see McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1161 (S.D. Miss. 1997). The Court concludes that any claims advanced against Burrow for breach of warranty cannot succeed.

In conclusion, the Court finds that in absence of any facts or legal basis to support the claims advanced against Burrow, this Defendant was fraudulently joined in an effort to defeat diversity jurisdiction. As a result, the Court concludes that the Plaintiffs' motion to remand should be denied, and that Burrow should be dismissed with prejudice from this suit. Finally, the Court finds nothing within the motion to merit an award of fees to either party as a result of the removal. *W.H. Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997).

### Conclusion

For the aforementioned reasons, the Court finds that the Plaintiffs' motion to remand this case [5-1] to the Circuit Court of Harrison County should be denied. The Court further finds that Burrow should be dismissed with prejudice from this suit. A separate Order in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear its respective costs in connection with this motion.

THIS the 20th day of January, 2004.

UNITED STATES DISTRICT JUDGE

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-80620-CIV-MARRA

BRUCE STERN,

    Plaintiff,

vs.

WYETH and ROBERT G. BLOUNT,

    Defendant.

_____/



FILED by _____ D.C.

JAN 2 2 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S-D. OF FLA. FT. LAUD.

## ORDER DENYING MOTION FOR REMAND

THIS CAUSE is before the Court upon Plaintiff's Motion for Remand [DE 3]. The Court has carefully considered the motion and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff filed this lawsuit in state court against Defendant Wyeth, a pharmaceutical manufacturer formerly known as American Home Products Corporation, and Robert G. Blount, a former Chief Financial Officer, Senior Executive Vice President, Director and member of Wyeth's Executive, Finance and Operations Committee. Defendant Blount retired from Wyeth in February, 2000, and became a citizen of the state of Florida. Plaintiff, a Florida citizen as well, brings state law product liability claims for negligence, negligence per se, design and marketing defects, inadequate and improper warnings and misrepresentation against both Defendants in connection with the fen-phen diet drugs manufactured by Wyeth. Defendant removed the case to federal court based

*13*

P.03

upon diversity jurisdiction by alleging fraudulent joinder of Defendant Blount. Plaintiff has moved to remand the case to state court.[1]

## II. DISCUSSION

Plaintiff filed a twenty-three (23) page, seventy-five (75) paragraph complaint asserting four counts sounding in tort. The complaint, in great detail, asserts a litany of wrongful acts giving rise to the causes of action. Only one of the seventy-five (75) paragraphs specifically mentions Defendant Blount. See ¶ 4 of Plaintiff's Original Complaint. Plaintiff merely claims that Blount was a former Wyeth officer, director and committee member. As a result, Plaintiff asserts Blount had responsibility for the management of Wyeth's business and operations, that he directly participated in Wyeth's management and was privy to confidential and proprietary information regarding the subject pharmaceutical products, including adverse undisclosed information. Plaintiff further contends Blount's execution of documents filed with the Securities and Exchange Commission ("SEC"), which contained information regarding the subject pharmaceuticals, was materially misleading. Plaintiff then asserts in a footnote, in what can only be described as an attempt at artful pleading, that all references to the Defendant Wyeth also constitute references to Defendant Blount. Thus, every alleged wrongful act of the corporate Defendant is also alleged to

---

[1] Recently, this case was transferred to the Eastern District of Pennsylvania by Order of the Multi-District Litigation Panel. This Court enters this Order following the general policy that a fully briefed ripe motion at the time of transfer must still be resolved by the transferor court.

2

P.04

be an act of Defendant Blount.[1] See Plaintiff's Original Complaint, n.2 at 5-6.

Defendants argue that Defendant Blount was fraudulently joined by Plaintiff for the sole purpose of defeating diversity. In Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998), the Eleventh Circuit identified three instances in which a joinder of a non-diverse party is fraudulent, and does thus not defeat diversity jurisdiction: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. See also Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir.1998). The burden of the removing party is a "heavy one." Crowe, 113 F.3d at 1538. To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff, though the Court may look beyond the pleadings. Id., citing B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981).

Defendants contend that there is no possibility that Plaintiff can establish a cause of action against Defendant Blount, and that Blount has no real connection to the claim against Wyeth. In its motion to remand, Plaintiff asserts that Blount may be held liable for negligence and

---

[1] Plaintiff's complaint was filed in a Florida state court. Attorneys filing pleadings in the Florida courts are required to abide by the Florida Rules of Judicial Administration. Rule 2.060(c) of the Florida Rules of Judicial Administration provides that "[t]he signature of an attorney [on a pleading] shall constitute a certificate by the attorney that . . . to the best of the attorney's knowledge, information, and belief there is good ground to support it." The Court questions whether there is good ground to support Plaintiff's attempt to attribute every act of the corporate Defendant to Defendant Blount by virtue of this pleading device.

3

P. 05

misrepresentation. Plaintiff's Motion to Remand at ¶¶ 7, 12; Brief In Support of Plaintiff's Motion to Remand at 3-11.[3] In Florida, in order for a corporate officer to be liable for torts committed principally by the corporation, the corporate officer must have personally participated in the tortious conduct. McElveen v. Peeler, 544 So.2d 270, 271-72 (Fla. 1st DCA 1989); Alsup v. Your Graphics Are Showing, Inc., 531 So.2d 222, 224 (Fla. 2nd DCA 1988). See also Florida Specialty, Inc. v. H 2 Ology, Inc., 742 So.2d 523, 527-28 (Fla.1st DCA 1999). Other factors include whether the corporation owes a duty of care to the plaintiff, whether the duty is delegated to the defendant officer, and whether the defendant officer has "breached this duty through personal – as opposed to technical or vicarious – fault." Personal liability cannot be imposed upon a corporate officer simply because of his or her general administrative responsibility in performance of some functions of the employment. The officer must have a personal duty towards the injured party. McElveen, 544 So.2d at 272.

Both parties agree that in Florida, misrepresentation requires: (1) a false statement about a material fact; (2) knowledge that the statement is false; (3) intent to induce action on the false statement; and (4) injury by the party acting in reliance on the representation. Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985). For the negligence claim, the usually elements of duty, breach, causation and damages are required, as modified by the McElveen factors for personal liability of corporate officers.

Plaintiff alleges that Blount had access to documents raising safety concerns about the diet-drugs at issue; that Blount breached his affirmative duty to disclose this information; and that Blount

---

[3]Plaintiff does not challenge Defendants' assertion in its Amended Notice of Removal that the amount in controversy in this case exceeds the jurisdictional amount of $75,000.00.

4

made misrepresentations about safety of these drugs when he signed Securities & Exchange Commission filings on behalf of Wyeth. Finally, Plaintiff alleges that Blount, as part of the senior management of Wyeth, ordered or was complicit in orders given to destroy adverse drug reports made to Wyeth.[4]

In opposition to the motion to remand, Defendant has put forth the affidavit of Defendant Blount, in which he states that as Chief Financial Officer of Wyeth and its predecessors, he principally worked on the financial side of the company. Declaration of Robert G. Blount, ¶ 3, Exhibit A to Defendants' Opposition to Remand [DE 4] (hereinafter, "Blount Declaration"). Blount retired from Wyeth in February 2000, at which time he moved his permanent residence to Florida. More importantly, Blount asserts that never had oversight responsibility for the subsidiaries and divisions involved in pharmaceutical manufacturing, design or marketing. Id. at ¶ 4. He denies any knowledge of any adverse drug reports, case studies or other information concerning a possible relationship between Pondimin or Redux and heart valve damages until the Mayo Clinic's public announcement in July, 1997, nor did he have knowledge of any document destruction. Id. at ¶ 6-7.

Defendants also put forth the declaration of Defendants' co-counsel, Richard Rosenbaum, stating that he caused a search to be performed of all SEC filings signed by Defendant Blount from 1994 until the July, 1997 announcement of problems with Wyeth's fen-phen drugs. Mr. Rosenbaum attests that he found no filings which made any representations about the safety of Pondimin and Redux. Plaintiff's theory of liability on the misrepresentation claim could therefore only be based on a material omission, stemming from Blount's alleged knowledge of such problems.

---

[4] Defendants point out that this allegation is not made in the Complaint, but only in the motion to remand.

5

In this case, Plaintiff's Complaint has failed to allege personal involvement by Defendant Blount in the tortious conduct which has allegedly resulted in injury to the Plaintiff. Nor does Plaintiff allege that the duties owed by Defendant Wyeth to Plaintiff were delegated to Defendant Blount. Moreover, Plaintiff has failed to allege the specific statements which he claims Defendant Blount misrepresented or failed to disclose in SEC filings and he has failed to allege that any alleged misrepresentations or omissions were done by Defendant Blount with the intent to defraud or deceive Plaintiff. Additionally, Plaintiff has failed to allege that he has relied to his detriment upon any of the misrepresentations allegedly attributed to Defendant Blount. Lastly, based upon the unrebutted declarations from Defendant Blount and Richard Rosenbaum, Plaintiff would not be able to assert valid claims if given leave to amend.

This Court concludes that under the first prong of the test set forth in Triggs, 154 F.3d at 1287, Plaintiff has not stated a possible claim against Defendant Blount as to the negligence and misrepresentation claims. In addition, the third prong of the Triggs test has been met, in that Blount was clearly added in this case to defeat diversity. Defendant Blount has no connection to Wyeth's alleged torts committed against Plaintiff.[5]

---

[5] The Court notes that the jurisdictional facts as pled are not fraudulent. Triggs, 154 F.3d at 1287 (second alternative prong of fraudulent joinder test).

6

## III. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Remand [DE 3] is hereby DENIED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this ___ day of January, 2003.

_____
KENNETH A. MARRA
United States District Judge

copies to:

United States District Judge Harvey Bartle III
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Andres Pereira, Esq.
Fleming & Associates, LLP
1330 Post Oak Boulevard, Suite 3030
Houston, TX 77056
Fax: (713) 621-9638

Michael C. Mattson, Esq.
Cooney, Mattson et al
P.O. Box 14546
Fort Lauderdale, FL 33302
Fax: (954) 568-0085

7